**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**Chambers of**
**Stephanie A. Gallagher**
**United States District Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_SAGChambers@mdd.uscourts.gov**
**(410) 962-7780**

August 24, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Sarah D. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
Civil No. 25-1394-SAG

Dear Counsel:

On May 1, 2025, Plaintiff Sarah D. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 12, 14 and 15). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on March 18, 2021, alleging a disability onset of February 2, 2021, later amended to January 1, 2022. Tr. 21. Plaintiff's claims were denied initially and on reconsideration. Tr. 21. On February 2, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 18-41. Following the hearing, on May 2, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 et seq., during the relevant time frame. Tr. 36. The Appeals Council denied Plaintiff's request for review, Tr. 3-9, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[1] Plaintiff filed this case against Leland Dudek, the Acting Commissioner of Social Security on May 1, 2025. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since January 1, 2022, the amended alleged disability onset date." Tr. 24. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "seizure disorder; adrenal insufficiency; Addison's disease; anxiety disorder; depressive disorder; post-traumatic stress disorder; attention-deficit hyperactivity disorder; and bipolar disorder." Tr. 24. The ALJ also considered Plaintiff's non-severe impairment of ulcerative colitis. Tr. 25. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 25. The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light exertional work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: she is incapable of climbing ladders, ropes, and scaffolds but is otherwise capable of occasional postural activities; she is capable of no more than occasional exposure to vibrations and slippery or uneven surfaces; she is incapable of working in an environment with lighting brighter than that found in a typical office, retail, or factory setting or in an environment with flashing lights (such as strobe lighting); she is capable of working in an environment with no more than a moderate noise level as defined by the Selected Characteristics of Occupations; she is able to perform work that does not require driving as a part of work duties or require any work-related exposure to hazards, such as unprotected heights and unguarded moving machinery; she is capable of traveling to and from a single workplace but is otherwise incapable of traveling for work; she is able to understand, remember, and carry out simple uninvolved written and oral instructions and tasks that can be learned from anywhere beyond short demonstration up to and including one month and work at a consistent pace throughout the workday at such tasks but not at a production rate pace where each task must be completed within a strict time deadline, such as work on a conveyor belt or assembly line, or within high quota demands, such as work with an hourly quota requirement; she is able to make occasional workplace decisions involving a few concrete variables in or from standardized situations; and she is able to sustain concentration and persist at workplace tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday.

Tr. 28. The ALJ determined that Plaintiff was able to perform past relevant work as a garment sorter because "[t]his work does not require the performance of work-related activities precluded by" the RFC. Tr. 33. The ALJ also determined Plaintiff could perform other jobs that existed in significant numbers in the national economy such as housekeeper / cleaner, mail clerk, and routing clerk. Tr. 34-35. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 35-36.

## III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

On appeal, Plaintiff argues that "[t]he ALJ failed to properly evaluate the supportability and consistency of the medical opinions of Deepa Balasubramaniam, M.D. and evidenced a misunderstanding of Plaintiff's adrenal insufficiency, otherwise known as Addison's disease." ECF No. 12 at 7. Specifically, Plaintiff contends that the ALJ mischaracterized the opinions as being based on Plaintiff's self-reported symptoms, although Dr. Balasubramaniam stated that she had drawn her conclusions based on a review of Plaintiff's medical history. ECF No. 12 at 10-12. Further, Plaintiff argues that the ALJ misunderstands Addison's disease and dismissed the medical opinions because the conclusions did not comport with the doctor's examination of Plaintiff although Plaintiff was not experiencing symptoms on the date of the examination. ECF No. 12 at 10-12.

Defendant counters that "the ALJ properly followed the applicable regulatory framework and amply addressed the factors of supportability and consistency based upon substantial evidence in the record as a whole." ECF 14 at 7. In reply, Plaintiff "reasserts and relies upon the arguments set forth in her Opening Brief." ECF No. 15 at 1.

When evaluating medical opinions in claims filed on or after March 27, 2017[2], an ALJ must, as the Fourth Circuit recently explained:

---

[2] *See Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

> "evaluate the persuasiveness" of that evidence by applying a five-factor test, 20 C.F.R. § 404.1520c(a); *see also id.* § 404.1520c(b)(2), (c). The factors are: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c)(1)-(5).
>
> Although the Social Security Administration must ultimately "stat[e] the ... reason or reasons upon which" its final decision "is based," 42 U.S.C. § 405(b)(1), an ALJ need not explain in detail how he "evaluate[d] the persuasiveness," 20 C.F.R. § 404.1520c(a), of each piece of evidence in the record. The ALJ only needs to say, for each "medical source" in the record, how each of the first two factors applies—that is, whether that source's conclusions are supportable by medical evidence and consistent with the rest of the record. *Id.* § 404.1520c(b)(1), -(2). An ALJ must consider all five factors, but need not discuss any save the first two unless those other factors are dispositive. *Id.* § 404.1520c(b)(3); *see* 42 U.S.C. § 405(b)(1).

*Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604-05 (4th Cir. 2025).

> The relevant regulations define these first two factors as follows:
>
> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1), -(2).

"Supportability is the degree to which a provider supports [his or her] opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)–(2)).

This Court has noted that supportability and consistency must be considered independently. *See Duane H. v. Kijakazi*, Civ. No. JMC-20-3673, 2021 WL 8314949, at *3 (D. Md. Dec. 29, 2021) (recognizing that to consider supportability "in conjunction with" consistency "would conflate the nuances of those factors."). The consistency factor is an outward facing inquiry, looking at whether the medical opinion is consistent with other evidence in the record. *Rosa M. v. Kijakazi*, No. 9:22-CV-04494-BHH-MHC, 2023 WL 9101308, at *7 (D.

S. C. Dec. 8, 2023). Evaluating supportability, on the other hand, requires the ALJ to assess the relevance of "the objective medical evidence and supporting explanations presented by a medical source" to the ultimate finding advanced by that medical expert. 20 C.F.R. § 404.1520c(c)(1).

Here, the ALJ's analysis of Dr. Balasubramaniam's medical opinions (Exhibits 13F; 14F) consisted of the following paragraph:

> After carefully reviewing the record as a whole, I find the opinions of the medical consultative examiner, Deepa Balasubramaniam, M.D., to be minimally persuasive. (Exhibits 13F; 14F). Dr. Balasubramaniam wrote the claimant was restricted to standing, walking, carrying, and lifting for less than 1/3 of the day. (Exhibit 14F at 3). Dr. Balasubramaniam's opinion is primarily based on the claimant's self-reported symptoms rather than her own examination. During the examination, Dr. Balasubramaniam noted the claimant had a normal gait and generally intact range of motion throughout her body. (Exhibits 13F; 14F). The severity and frequency of the symptoms the claimant reported during the consultative examination is not consistent with physical examinations, objective testing, and recommended treatment throughout the record. The record is more consistent with finding the claimant capable of a restricted range of light work. (Exhibits 3F; 9F; 11F; 17F; 19F; 20F).

Tr. 31-32.

The Court agrees that the ALJ did not adequately articulate an evaluation of the consistency factor sufficient to satisfy the requirements of 20 C.F.R. § 404.1520c(c)(2). The two final sentences of the evaluation are the only two that arguably go to addressing consistency. Both sentences are conclusory, with a broad reference to "throughout the record" and a citation to six exhibits which encompass 1,029 pages of the record. The ALJ did not discuss how these exhibits, or specific information within the exhibits, were inconsistent with Dr. Balasubramaniam's medical opinions and the restrictions therein. The ALJ's evaluation is missing the analysis required by 20 C.F.R. § 404.1520c(c)(2). *See Stephen R. v. O'Malley*, No. 21-2292, 2024 WL 3508155, at *4 (4th Cir. 2024) (finding an ALJ's did not correctly evaluate medical opinions because "his analysis was threadbare and lacked citations" where the ALJ "merely noted" the opinions were consistent with the record but did not "reference or describe to what evidence he was referring"); *see also Cleo G. v. Commissioner of Social Security*, No. EA-24-2834, 2025 WL 2771919, at *5-6 (D. Md. Sept. 29, 2025) (finding "the ALJ's failure to cite to the record with any specificity renders this Court unable to meaningfully review the ALJ's consistency assessment" where "none of the ALJ's consistency analyses of the three medical opinions acknowledge conflicting evidence in the record or adequately identify the evidence in the record to which the ALJ referred").

The ALJ's citation to over 1,000 pages is so broad - Exhibit 3F alone comprises 557 pages - as to be meaningless without further specificity. "Without knowing the parts of the record the ALJ believed to be inconsistent with [the medical] opinion, it is impossible for the Court to determine whether the ALJ's finding is logically sound." *Judy L. v. Bisignano*, No. TJS-25-1771, 2026 WL 948960, at *3 (D. Md. Apr. 8, 2026) (finding the ALJ's "conclusory rationale" of the

consistency factor "deficient" where the ALJ noted the medical opinion was "not fully consistent" with the record and claimant's self-reported activities, but said "nothing more" although the medical record exceeded 2,000 pages). "If the ALJ believes [the] opinion is inconsistent with the longitudinal evidence of record, the ALJ must explain how that is so…. The ALJ must specify which parts of the record are not consistent with [the] opinion so that the Court can review the ALJ's findings for substantial evidence." *Id.*, at *4. The ALJ did not provide this explanation.

Defendant argues that "the ALJ's discussion, making numerous citations to the evidence in the record and explaining in detail how he reached the different functional limitations in the RFC, clearly exceeds [the required] standard." ECF No. 14 at 9. Defendant argues that in addition to a review of Dr. Balasubramaniam's opinions, "[t]he ALJ further relied on M. Lowen, M.D. and M. Ahn, M.D., the expert State agency medical consultants at the initial and reconsideration levels," and discusses the findings of both consultants and ALJ's analysis of each. ECF No. 14 at 10-11. Defendant contends that the ALJ need "not discuss every possible permutation of the evidence on point or potential limitations," and is not obligated "to refer to every piece of evidence contained in the record"; and that a "'logical bridge' that connects the evidence to the ALJ's conclusions satisfies the ALJ's obligation." ECF No. 14 at 12-13. Defendant adds that the ALJ provided the "necessary discussion to allow a reviewing court to understand why" the RFC did not mirror Dr. Balasubramaniam's opinions and why the RFC was supported. ECF No. 14 at 13.

The Court cannot take note of other evidence in the record which was not discussed by the ALJ in the consistency analysis of Dr. Balasubramaniam's medical opinions and then find that it may support the ALJ's determination of the persuasiveness of those opinions. *See Connie C. v. Bisignano*, No. DRM-24-3613, 2026 WL 178777, at *4 (D. Md. Jan. 22, 2026) ("The regulation required the ALJ to conduct *and explain* a consistency analysis . . . . That did not occur, and '[o]ur circuit precedent makes clear that it is not the Court's role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record'") (quoting *Fox v. Colvin*, No. 14-2237, 2015 WL 9204287, at *4 (4th Cir. Dec. 17, 2015)). "The Court 'may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.'" *Cavers v. Colvin*, No. TMD-13-632, 2014 WL 4662515, at *8 (D. Md. Sept. 17, 2014) (quoting *Haga v. Astrue,* 482 F.3d 1205, 1207–08 (10th Cir. 2007).

The ALJ was required to conduct *and explain* the consistency analysis of Dr. Balasubramaniam's medical opinions. 20 C.F.R. § 404.1520c(c)(2). "[T]his cursory analysis does not build a logical bridge between the evidence and the ALJ's conclusions and frustrates meaningful judicial review, requiring remand." *Heather G .v. Bisignano*, No. DRM-24-3399, 2026 WL 381625, at *4 (D. Md. Feb. 11, 2026) (finding that ALJ failed to adequately evaluate the supportability and consistency factors when the ALJ briefly summarized many pages of medical evidence without specifying how the evidence was unsupportive or inconsistent with the provider's opinion).

For these reasons, the Court cannot meaningfully review the ALJ's consistency analysis, and remand is necessary so that the ALJ can provide an analysis of Dr. Balasubramaniam's medical

opinions that fully comports with 20 C.F.R. § 404.1520c. The Court takes no position on what level of persuasiveness, if any, should attach to those opinions.

Because the case is being remanded on other grounds, the Court need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider those arguments and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Stephanie A. Gallagher
United States District Judge